**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| *In re Motion to Quash* | ) ) ) | Case No. ______________________ |

**Non-party National Pork Producers Council's**
**Motion to Quash Subpoena**

The Humane Society of the United States ("HSUS") and another entity are engaged in federal litigation in North Carolina with The Hanor Company of Wisconsin, LLC ("Hanor"). *See HSUS and Sound Rivers v. The Hanor Co. of Wisc., LLC*, No. 4:15-CV-00109 (E.D.N.C.). This miscellaneous action arises out of a Rule 45 subpoena (the "Subpoena," a true and correct copy of which is attached as Exhibit A) that HSUS served—defectively—on non-party National Pork Producers Council ("NPPC"). HSUS seeks documents and communications that HSUS alleges NPPC may have had with HSUS's opposing party in the Lawsuit, Hanor, but does not say that those documents are unavailable from Hanor such that non-party NPPC should be burdened with a Rule 45 subpoena. On top of seeking information from a non-party that should be sought directly from a party, the Subpoena is overly broad, unduly burdensome, and calls for the production of privileged information.

Accordingly, NPPC now brings this motion for an order under Fed. R. Civ. P. 26(c)(1)(A)(order "forbidding the disclosure or discovery"), 45(d)(1)(order enforcing party's responsibility to avoid undue burden or expense on non-party), and 45(d)(3)(order quashing subpoena), for an order quashing the Subpoena and awarding NPPC its costs and expenses, including attorneys' fees, associated with bringing this Motion.

I.      **Background.**

    a.      **The National Pork Producers Council and its history with HSUS.**

The National Pork Producers Council, which "consists of 42 affiliated state associations, is the global voice for the pork industry." *See What is NPPC*, www.nppc.org. As it relates to this miscellaneous action, NPPC works with pork producers and state associations to respond to litigation threatened against them by entities such as HSUS. *See* Exhibit B, Declaration of Michael Formica ("Formica Decl.") at ¶¶ 5-6.

HSUS has a history of harassing NPPC and its members. *Id.* ¶ 11. For example, HSUS periodically posts the phone number for NPPC on its social media. Each time that HSUS does this, NPPC's offices are flooded with phone calls—sometimes including bomb threats—and NPPC is forced to shut down its phone system. *Id.* This Subpoena is just the latest example of HSUS targeting NPPC and forcing it to expend resources unnecessarily.

    b.      **NPPC negotiates consent agreements on behalf of the pork industry.**

HSUS's lawsuit concerns Hanor's alleged failure "to provide mandatory emergency release notifications to state and local authorities of releases of the hazardous substance ammonia from a company-owned concentrated animal feeding operation (CAFO), located just outside of Rocky Mount, North Carolina." Complaint ¶ 1, *HSUS and Sound Rivers v. The Hanor Co. of Wisc., LLC*, No. 4:15-CV-00109 (E.D.N.C. July 1, 2015). HSUS alleges that "Hanor … entered into an administrative consent agreement with the U.S. Environmental Protection Agency (EPA) that purported to evaluate air pollution from CAFO." *Id.* at ¶ 8. HSUS alleges further that "[i]n early 2005, after a multi-year drafting process with representatives from the CAFO industry—including NPPC—the EPA published a notice in the Federal Register that it was taking public comment on an administrative consent agreement and final order, referred to as the 'Air Consent

Agreement' or 'Agreement.'" *Id.* at ¶ 65 (citing Animal Feeding Operations Consent Agreement and Final Order, 70 Fed. Reg. 4958 (Jan. 31, 20015)).

HSUS also alleged that "[o]n July 10, 2012, HSUS, on behalf of its affiliated members, provided detailed notice pursuant to the citizen suit provisions of ECPRA, 42 U.S.C. §§ 1046, of the violations [alleged in the North Carolina lawsuit] and of its intent to file a civil lawsuit against Hanor in the event the alleged violations continued at the end of sixty days." *Id.* at ¶ 13.

Immediately after HSUS sent the notice letters described in paragraph 13 of its Complaint, and in direct response to HSUS's having done so, NPPC entered into a written Common Interest Litigation Agreement ("Common Interest Agreement") with Hanor and other non-parties. The Common Interest Agreement sought to protect privileged communications related to anticipated litigation. *See* Formica Decl. ¶ 6.

### c. HSUS subpoenas NPPC's documents and communications with Hanor.

On October 11, 2018, a Federal Express package addressed to Nick Giordano was delivered the offices of non-party NPPC. Mr. Giordano, an attorney for NPPC who was traveling internationally at the time, did not sign for the package. NPPC's receptionist did; she put the package on Mr. Giordano's desk. When he opened it after returning to the office on October 18, he found a letter addressed to a "Mr. Elkins" (there is no "Mr. Elkins" employed by or associated with NPPC) and the Subpoena, which purported to require NPPC to hand over documents four days later (at "09:00 AM") to HSUS.[1]

---

[1] Service of the Subpoena was deficient because it failed to comply with Fed. R. Civ. P. 45(b)(1), which requires service "of a subpoena by delivering a copy *to the named person*." (emphasis added). Service by Federal Express is not "delivering a copy to the named person," and delivery of a Federal Express envelope to someone other than its intended recipient—here, NPPC's receptionist, as opposed to Mr. Giordano himself—is insufficient. *See, e.g.*, *McClendon v. Dougherty*, 2011 WL 4971847, at *3 (W.D. Pa. Oct. 19, 2011); *e-Merging Market Techs., LLC v. ELK Auto. Components*, 2011 WL 3440470, at *2 (E.D. Mich. Aug. 8, 2011); *State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Center, Inc.*, 2008 WL 11342610, at *3 (M.D. Fla. Apr. 15, 2008)("State Farm's service [of a subpoena] on the receptionist and records custodian was not sufficient.").

HSUS's Subpoena seeks non-party NPPC's documents and communications with Hanor (HSUS's opposing party). The Subpoena includes three document requests:

1. ALL DOCUMENTS RELATING to [Hanor's] FACILITY during THE RELEVANT TIME PERIOD [July 1, 2010 to the present], including but not limited to ANY requested, provided, or offered payments, legal assistance, or assistance of any kind RELATING to [Hanor's] FACILITY.

2. ALL DOCUMENTS RELATING to any requested, provided, or offered payments, legal assistance, or assistance of ANY kind to [Hanor] during THE RELEVANT TIME PERIOD.

3. ALL DOCUMENTS RELATED to the meeting scheduled on August 29, 2012 concerning Plaintiff HSUS's 2012 Notice of Intent to Sue letter with EPA employees or agents including Timothy J. Sullivan, and representatives of NPPC and [Hanor]. This includes ALL DOCUMENTS generated before or after such meeting which RELATE directly or indirectly to the meetings' [sic] discussions.

**II.    The Subpoena should be quashed.**

The Subpoena should be quashed so as to shield non-party NPPC from the burdens of compliance because (a) the Subpoena seeks information from a non-party that should be sought from a party; (b) it seeks privileged or protected information; and (c) it is overly broad and unduly burdensome, and HSUS has done nothing to minimize that burden.

Parties and attorneys who issue Rule 45 subpoenas "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). This Rule has teeth; "[t]he court for the district where compliance is required *must* enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* (emphasis added).

Courts "must" "quash or modify a subpoena that ... fails to allow a reasonable time to comply, that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). Each condition is met here.

4

Rule 45 subpoenas are "subject to the relevance requirements of Rule 26(b)(1)." *York Grp., Inc. v. Pontone*, 2011 WL 13136189, at *1 (W.D. Pa. Nov. 15, 2011)(citation omitted)." "Accordingly, the subpoenaing party may only seek 'discovery regarding *any nonprivileged material* that is relevant to any party's claim or defense and proportional to the needs of the case." *Siroky v. Allegheny Cty.*, 2018 WL 1465759, at *2 (W.D. Pa. Mar. 26, 2018)(emphasis added). Those common principles are often repeated by this Court. *See, e.g., BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347 (D.D.C. 2018); *Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 105 (D.D.C. 2017); *Brieterman v. U.S. Capitol Police*, 323 F.R.D. 36, 42 (D.D.C. 2017); *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 83 (D.D.C. 2010).

    a.    **The Subpoena seeks documents from a non-party that should be sought from HSUS's opposing party, particularly because they include documents that are communications between NPPC and HSUS's opposing party.**

Subpoena requests 1 and 2 seek NPPC's communications and documents with Hanor, and request 3 seeks documents from a meeting at which Hanor supposedly was present. These requests are facially objectionable, because there is no indication that these documents and communications are unavailable from Hanor. Courts have quashed subpoenas, or refused to enforce motions to compel them, in such circumstances. *See, e.g., Tex. Util. Co. v. Santa Fe Indus., Inc.*, 1987 WL 11993, at *1 (D.D.C. May 26, 1987). There, the plaintiff to litigation in New Mexico subpoenaed communications the defendant had had with a non-party, without first seeking the communications from the defendant itself. The court held that the plaintiff's "failure to seek discovery of these documents from the defendant raises an issue of relevancy and raises a question as to the plaintiff's choice of forum in which to pursue this dispute. The Court will not permit the plaintiff to circumvent the discovery rulings and procedures of the New Mexico court by attempting to obtain the contested documents from" the non-party." *Id.*

There are numerous similar cases. *See, e.g., WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) (quashing subpoena, in part, because issuing party did not "contend or attempt to show that it ha[d] been unable to obtain [the requested] information from those parties to the underlying litigation."); *Lakeview Pharm. of Racine, Inc. v. Catamaran Corp.*, 2017 WL 4310221, at *7-8 (M.D. Pa. Sept. 28, 2017)(quashing subpoena, in part because the issuer (the plaintiff) had "failed to provide a reason this information must be obtained from third parties, as opposed to [from the defendant] directly."). The court in *Lakeview* agreed with one of the subpoenaed third parties, which objected that: "since Catamaran is a party to the lawsuit, you [Lakeview] can obtain the requested information from Catamaran through the normal course of discovery." *Id.* at *10 (citation omitted). *See also Earthy, LLC v. BB&HC, LLC*, 2017 WL 4512761, at *3 (N.D. Ill. Oct. 10, 2017)(quashing subpoena, in part because issuer "could have sought the requested information from sources *other than* [subpoenaed non-party], such as from [a party to the underlying lawsuit].")(emphasis in original); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 2014 WL 12756174, at *2 (S.D. Ind. Sept. 12, 2014)(quashing subpoenas where burden on non-parties "far outweigh[ed]" benefit to party "given the sweeping nature of the requests and Defendants' failure to demonstrate that the requested information is unavailable from other sources."); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)(issuer's failure to demonstrate that it had tried to obtain documents from party before issuing subpoena to non-party weighed in court's determination that requests were an undue burden).

In *Moon*, the court held that because the subpoena's "requests all pertain[ed] to defendant, who is a party," the plaintiff (who had issued the subpoena) could "more easily and inexpensively obtain the documents from" the defendant than the non-party. 232 F.R.D. at 638 (citations omitted). Because the plaintiff in *Moon* did not show that it had "attempted to obtain

6

these documents from defendant," the court found that "requiring [the] nonparty ... to produce these documents is an undue burden on [the] nonparty[.]" *Id.* So too here.

  **b.**  **The Subpoena seeks documents that are protected by the attorney-client privilege, the work-product doctrine, the joint-defense privilege, and/or the common-interest privilege.**

Under Rule 26(b)(1), privileged information is not subject to discovery. As discussed above, NPPC has a Common Interest Agreement with Hanor that deals specifically with the subject-matter of HSUS's litigation against Hanor, and is intended to enable NPPC and Hanor to cooperate in the defense of that and related litigation. *See* Formica Decl. at ¶ 6. As such, communications among Hanor, NPPC, and their respective attorneys in furtherance of their joint interests are shielded from discovery. "The joint defense privilege, often referred to as the common interest rule, is an extension of the attorney-client privilege that protects from forced disclosure [of] communications between two or more parties and/or their respective counsel if they are participating in a joint defense agreement." *U.S. v. Hsia*, 81 F. Supp. 2d 7, 16 (D.D.C. 2000)(citation omitted). "It permits a client to disclose information to her attorney in the presence of joint parties and their counsel without waiving the attorney-client privilege and is intended to preclude joint parties and their attorneys from disclosing confidential information learned as a consequence of the joint defense without permission." *Id.* (citation omitted). "A disclosure in confidence of attorney-client information to a third party to the attorney-client relationship will not waive the attorney-client privilege where the communicants share the same legal interest in the subject matter of the litigation." *Id.*

A species of the joint-defense privilege may even have motivated this Court's holding in *Santa Fe*. There, the Court noted that that "the information that plaintiffs [sought] to obtain indirectly from defendants was disclosed to [a third party] in confidence." 1987 WL 11993, at

7

*1. Citing a seminal joint-defense case from the Ninth Circuit, the Court wrote that a "disclosure in confidence of attorney-client information to a third party to the attorney-client relationship will not waive the attorney-client privilege where the communicants share the same legal interest in the subject matter of the litigation." *Id.* (citing, *inter alia*, *Continental Oil Co. v. U.S.*, 330 F.2d 347, 350 (9th Cir. 1964)).

Subpoena request 3 is the most obvious example of joint-defense-protected materials. That request seeks information relating to a meeting supposedly among NPPC, Hanor, and the EPA "concerning Plaintiff HSUS' 2012 Notice of Intent to Sue letter[.]" Though communications with EPA are not themselves privileged,[2] the request makes clear that it includes "ALL DOCUMENTS generated before or after such meeting which RELATE directly or indirectly to the meetings' [sic] discussions." Such documents, if they exist, *would* be subject to the joint-defense privilege. Request 3, on its face, is not limited to documents actually exchanged at such a meeting, but also includes privileged documents created to prepare for ("before ... such meeting") and react to ("after such meeting") the discussions. Thus, even assuming that documents remain more than six years after a meeting that does not appear on anyone's calendar, Decl. of M. Formica at ¶ 10, such documents would be privileged and therefore shielded from discovery pursuant to Fed. R. Civ. P. 26(b)(1).

That leaves documents actually exchanged at such a meeting. With respect to these sorts of documents, "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations.... In order for settlement talks to be effective, parties must feel uninhibited in their communications. Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their

---

[2] As discussed below, however, they are protected under Federal Rule of Evidence 408, and as such are immune from third-party discovery.

8

proposed solutions cannot be used on cross examination, under the ruse of 'impeachment evidence,' by some future third party." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). "The settlement privilege is also necessary because *permitting third-party discovery of negotiation communications would lead to other undesirable results*." *Id.* at 982 (emphasis added).[3]

Subpoena requests 1 and 2 also call for joint-defense-privileged information. Request 1 seeks "ALL DOCUMENTS RELATING TO [Hanor's] FACILITY," while Request 2 seeks documents relating to "any requested, provided, or offered payments, legal assistance, or assistance of ANY kind to" Hanor. HSUS's lawsuit alleges that Hanor violated the EPCRA by failing to provide notice of "releases of the hazardous substance ammonia from a company-owned concentrated animal feeding operation (CAFO), located just outside of Rocky Mount, North Carolina." *See* Compl. ¶ 1; Formica Decl. ¶ 6. Indeed, HSUS's subpoena defines "facility" to mean "the confined swine operation in Edgecombe County located at … 6717 NC 97W, Battleboro, NC 27809." As this screen shot from Google maps shows, that "facility" is "located just outside of Rocky Mount, North Carolina." Compl. ¶ 1:



---

[3] NPPC is aware that this Court in *In re Subpoena Issued to CFTC* declined to follow the Sixth Circuit's lead in *Goodyear* by, as the Court put it, "defin[ing] new privileges in discovery[.]" 370 F. Supp. 2d 201, 207 (D.D.C. 2005). This Court, however, is unlikely to be faced with the decision whether to "define" a new privilege, because as discussed above, NPPC does not believe that any documents that actually were exchanged in the course of an August 2012 settlement discussion still exist (if they ever existed in the first place). *See* Formica Decl. at ¶ 10.

9

To the extent that HSUS may seek these documents from NPPC *at all*, given its failure to show their unavailability from Hanor, they are shielded from discovery by the joint-defense privilege evidenced by NPPC's Common Interest Agreement with Hanor and others, and should be quashed for that reason.

The analysis could end here, but the requested documents also are protected work product. HSUS alleges that "Hanor ... entered into an administrative consent agreement with the U.S. Environmental Protection Agency (EPA) that purported to evaluate air pollution from CAFO." *Id.* at ¶ 8. HSUS alleges further that "[i]n early 2005, after a multi-year drafting process with representatives from the CAFO industry—including NPPC—the EPA published a notice in the Federal Register that it was taking public comment on an administrative consent agreement and final order, referred to as the 'Air Consent Agreement' or 'Agreement.'" *Id.* at ¶ 65 (citing Animal Feeding Operations Consent Agreement and Final Order, 70 Fed. Reg. 4958 (Jan. 31, 20015)). HSUS also alleges that "[o]n July 10, 2012, HSUS, on behalf of its affiliated members, provided detailed notice pursuant to the citizen suit provisions of ECPRA, 42 U.S.C. §§ 1046, of the violations [alleged in the North Carolina lawsuit] and of its intent to file a civil lawsuit against Hanor [.]" *Id.* at ¶ 13.

To the extent that NPPC has documents that are relevant and responsive to the subpoena, those documents exist because NPPC and Hanor were communicating in furtherance of their common legal interest in opposition to HSUS's stated legal position. Formica Decl. ¶ 6.

    **c.**    **The Subpoena is overly broad and unduly burdensome.**

The drafters of Rule 45 were particularly concerned with protecting non-party subpoena recipients from undue burden; the word "burden" appears five times in the rule. And, on penalty of sanctions, parties and attorneys who issue subpoenas "must take reasonable steps to avoid

10

imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). For several reasons, HSUS has not taken those reasonable steps here.

### i. The Subpoena includes "Instructions" that require NPPC to undertake burdens that are not required under the Federal Rules.

The "Instructions" accompanying the Subpoena purport to require NPPC to undertake burdens that are not required under the Federal Rules. For example, with respect to documents that are "no longer in existence," the Instructions purport to require NPPC to explain "what the disposition of [the documents] was." When applied to a non-party subpoena covering more than eight years (the "relevant time period" being defined as "from July 1, 2010 to the present"), that instruction is unduly burdensome. Moreover, NPPC does not maintain electronic records for more than eighteen months. *See* Formica Decl. ¶ 8. Accordingly, it would be impossible to explain why each document that *might* once have existed is "no longer in existence."

### ii. The eight-year "relevant time period" is overly broad and unduly burdensome.

The eight-year "relevant time period" described in the Subpoena is overly broad and unduly burdensome. *See, e.g.*, *Morrow v. Air Ride Techs., Inc.*, 2006 WL 559288, at *1 (S.D. Ind. Mar. 6, 2006)(seven-year period was overly broad); *Columbia Asset Recovery Group, LLC v. Phoenix Processor Ltd. P'ship*, 2014 WL 813796, at *3 (W.D. Wash. Mar. 3, 2014)(denying motion to compel and quashing non-party subpoena where one request was "so broad that it would require [the subpoenaed non-party] to turn over virtually all of its financial records" over a seven-year period); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005)(ten-year period was overly broad). Requiring a non-party to search for and turn over records from an eight-year period would be unduly burdensome.

### iii. Requests for "all documents" are overbroad.

Finally, the Subpoena's requests seek "all documents" relating to given topics. Courts have found that document requests in non-party subpoenas that seek "all documents" are overly broad and unduly burdensome. *See, e.g., Morrow*, 2006 WL 559288, at *1 (quashing request seeking "all documents" relating to communications between non-party and one of the parties to the litigation, over a seven-year period, even though the serving party "offer[ed] to pay all reasonable costs of compliance with the subpoena[.]"). Pointedly, HSUS has not offered to reimburse NPPC for the time and expense that compliance with HSUS's Subpoena would entail.

### LCvR7 (m) CERTIFICATION

NPPC's counsel left a message for counsel for HSUS, explaining the necessity of this filing and offering to withdraw it if HSUS withdraws its Subpoena, but was not able to determine whether HSUS opposes the relief sought.

### CONCLUSION

For the foregoing reasons, NPPC respectfully requests that the Court quash HSUS's Subpoena and award NPPC sanctions—including its attorneys' fees—pursuant to Federal Rule of Civil Procedure 45(d)(1).

\* \* \*

Respectfully submitted,

__Sari M. Long/DRK__
Sari M. Long (Atty. No. 10121543)
FAEGRE BAKER DANIELS LLP
1050 K Street NW, Suite 400
Washington, DC 20001
T. 202.312.7029
Sari.Long@FaegreBD.com

Daniel R. Kelley
(*pro hac vice* application forthcoming)
FAEGRE BAKER DANIELS LLP
300 N. Meridian St., Suite 2700
Indianapolis, IN 46204
T. 317.237.0300
Daniel.Kelley@FaegreBD.com

Lance W. Lange
(*pro hac vice* application forthcoming)
FAEGRE BAKER DANIELS LLP
801 Grand Ave. #2100
Des Moines, IA 50309
T. 515.248.9000
Lance.Lange@FaegreBD.com

*Counsel for National Pork Producers Council*

## Certificate of Service

I certify that on October 19, 2018, I served the foregoing by Federal Express, overnight delivery, to the following counsel:

James L. Connor, II
CALHOUN, BHELLA & SECHREST
4819 Emperor Blvd., Suite 400
Durham, NC 27703

*Counsel for the
Humane Society of the United States*

__Sari M. Long/DRK__
Sari M. Long

*Counsel for National Pork Producers Council*

13